COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  | § |  |
|---|---|---|
| D. BRENT LEMON D/B/A | | No. 08-15-00309-CV |
| LAW OFFICE OF D. BRENT LEMON, | § | |
| | | Appeal from |
| Appellant, | § | |
| | | County Court at Law No. 5 |
| v. | § | |
| | | of Dallas County, Texas |
| DANIEL HAGOOD, | § | |
| | | (TC # CC-11-03989-E) |
| Appellee. | § | |

## **O P I N I O N**

This appeal is the second go around between lawyers embroiled in a fee dispute. Daniel Hagood acted as co-counsel alongside Shaw & Lemon in a construction defect case. The lawyers were ultimately successful in obtaining a substantial judgment for their clients. Everyone agrees that Hagood was entitled to twenty-five percent of the of the forty percent contingency fee for his role in the case, which equates to ten percent of the total recovery. The contingency fee issue became thorny, however, when both the judgment creditors and the judgment debtor went into bankruptcy. The case became more complicated still when our Appellant here, D. Brent Lemon, was hired as special counsel in the judgment debtor's bankruptcy case and recovered more than a million dollars for the bankrupt estate, much of which was used to pay part of the judgment that Hagood had helped to obtain. Lemon was paid

substantial attorney's fees through the bankruptcy for doing so, but nothing was paid to Hagood. Upset with this state of affairs, Hagood sued Lemon over the unpaid fee in state court.[1]

Following the first trial of this fee dispute case, Hagood prevailed but the judgment was reversed on appeal based on charge error. *Lemon v. Hagood*, 05-13-00132-CV, 2014 WL 3700687, at *4 (Tex.App.--Dallas July 24, 2014, no pet.)(mem.op.). Following the second trial, Hagood prevailed again. For the reasons stated below, we reverse and render.

## FACTUAL AND PROCEDURAL BACKGROUND

This tale begins with husband and wife Gary Carpenter and Julie Perez (the Carpenters) who claimed that Holmes Builders, Inc. erred in the construction of their home. They hired attorney Van Shaw to represent them in 1999, and signed a fee contract giving Shaw a forty percent contingency in any recovery. At the time, Lemon was doing contract work for Shaw. By 2000, however, Shaw and Lemon entered into a partnership (Shaw & Lemon) and the Carpenters were represented by the partnership. On several occasions Shaw & Lemon had asked Appellee Daniel Hagood to assist with the trial of various cases, and the partnership did so in the Carpenter-Holmes Builders litigation. Hagood was to be paid twenty-five percent of the total forty percent contingency fee out of any recovery. Hagood never had a written agreement with the Carpenters. The general division of responsibilities dictated that Shaw and Hagood would handle the trial, and Lemon would tend to motion practice matters, some discovery, and post-trial collections or appeals.

The trial, held in the Fall of 2001, went well for the Carpenters. The jury's answers supported a verdict in excess of $1.8 million. The trial court, however, granted a judgment notwithstanding the verdict that resulted in a take nothing judgment and saddled the Carpenters

---

[1] This case was transferred to us by the Fifth Court of Appeals, and we apply its precedents to the extent they might conflict with our own. *See* TEX.R.APP.P. 41.3.

with court costs. This turn of events contributed to the Carpenters filing for bankruptcy in February 2002. The Carpenter's claim against Holmes Builders, became an asset of the bankruptcy estate for the benefit of the Carpenters' creditors. The bankruptcy trustee[2] filed an application to employ Shaw and the firm of Shaw & Lemon as special counsel to pursue that claim. Shaw and the firm would do so on the same fee basis that the Carpenters had agreed to.

Lemon then pursued an appeal of the JNOV that had been entered in the Carpenter-Holmes Builders case. In March 2003, while that appeal was pending, Shaw and Lemon had a falling out. Lemon opened his own office and took the Carpenter file with him. As for the cases that Lemon took, he suggested that as each case "is resolved or remuneration received (regardless of who has primary possession or responsibility) a distribution to the partners will be made per our agreement." The dissolution was less than friendly, leading to protracted litigation beginning in 2003 and which is described in our record as "contentious" and "acrimonious."[3] The Carpenters wrote both Shaw and Lemon in December 2003 expressing their desire not to be involved in the former partners' disputes, and urged both to work collaboratively on the Carpenters' behalf, but they desired that Lemon be their sole point of contact.

Lemon was successful with the appeal. The Eastland Court of Appeals (on transfer from the Dallas Court of Appeals) reversed the JNOV and remanded the case for entry of judgment in accordance with the jury's verdict. *See Carpenter v. Holmes Builders, Inc.*, No. 11-02-00132-CV, 2004 WL 306130 (Tex.App.--Eastland Feb. 19, 2004, pet. denied). On February 11, 2005, the Texas Supreme Court denied Holmes Builders' Motion for Rehearing of its Petition for

---

[2] In a bankruptcy proceeding, the trustee manages (or liquidates) the estate of the debtor. 11 U.S.C. § 704 (2016)(Chapter 7);11 U.S.C. § 1104 (2016)(Chapter 11).

[3] Three appellate decision arose out of that litigation: *Shaw v. Lemon*, 427 S.W.3d 536 (Tex.App.--Dallas 2014, pet. denied), *cert. denied*, 135 S.Ct. 1563 (2015); *Shaw v. Lemon*, 05-09-01081-CV, 2010 WL 348372 (Tex.App.--Dallas Feb. 2, 2010, no pet.)(mem. op.); *In re Shaw*, 05-07-01040-CV, 2007 WL 2447275, at *1 (Tex.App.--Dallas Aug. 30, 2007, orig. proceeding)(mem. op.).

Review. Important here, on February 28, 2005, a motion was filed in the Carpenters' bankruptcy to sell the bankruptcy estate's interest in the Carpenter-Holmes Builder's case back to the Carpenters. The bankruptcy court approved that sale on March 22, 2005, and in exchange for $62,500, the Carpenters obtained the bankruptcy estates' interest in the litigation claim "free and clear of all liens, claims and encumbrances."

On April 6, 2005, the state trial court in the Carpenter-Holmes Builders case entered a judgment consistent with the court of appeals' mandate, thereby giving the Carpenters a judgment for $2,003,240 against Holmes Builders. Hagood received a copy of the trial court's new judgment in April 2005 and promptly wrote Lemon reminding him of his fee interest. Lemon did not respond to Hagood's letter, nor to two similar letters sent in July 2005 and August 2005. Lemon's unresponsiveness convinced Hagood that "I was in for a war. I wasn't going to get my money easy." To that end, Hagood retained his own counsel and in April 2006 filed an intervention in the Carpenter-Holmes Builders state court litigation asserting his fee interest. He was promptly informed that Holmes Builders had itself filed for bankruptcy and any intervention seeking his fee interest in the state court case was a violation of the automatic stay.

In the Holmes Builders bankruptcy, the Carpenters and another couple complaining of a defective home, the Galases, were the largest creditors. The initial filings apparently showed few assets to pay those claims. The bankruptcy trustee, with court approval, then hired Lemon to pursue two different claims to infuse assets into estate. One claim related to the denial of coverage under a liability insurance policy in favor of Holmes Builders. The second group of "alter ego" claims sought to return money improperly transferred out of the company. Lemon was to be paid a thirty-four percent contingency for any sums he recovered, subject to review and approval by the bankruptcy court. As a part of the application to employ him, Lemon filed

4

an affidavit stating "[m]y representation of [the Carpenters] has been terminated and I have waived all claim for any recovery of attorney fees, for all past services, directly from [the Carpenters]." He also swore that "[n]either I, my firm, nor any member therefor, insofar as I have been able to ascertain has any current connection with the debtor, creditors, or any other party in interest..." Hagood added himself to the master service matrix to monitor the progress of the bankruptcy. By November 18, 2009, Lemon had secured a $500,000 settlement of the insurance policy claim for the bankruptcy estate. The trustee proposed an interim distribution of $252,539.70 to the Carpenters, and $157,648.66 to Lemon.[4] Hagood objected to the Carpenters' proposed interim payment and raised his entitlement to a portion of the recovery. The bankruptcy judge allowed the interim payments, and in its order approving the Carpenter's payment, noted that $360,000 was available for payment to Hagood and the Galases, who had also filed an objection. Lemon was also able to secure an additional $684,474.24 for the bankruptcy estate through the alter ego claims. On August 6, 2010, the trustee filed a final report which proposed to distribute an additional $324,068.40 to the Carpenters, $40,733.48 to the Galases, and an additional fee award of $230,460.40 to Lemon. Hagood objected through his bankruptcy counsel as no funds were designated for him.

The bankruptcy judge took up the objection at a hearing on November 3, 2010. During the hearing, the judge raised concerns as to whether Hagood's objection was procedurally proper, suggesting an adversary proceeding was the appropriate procedure to raise this type of claim. The judge was also concerned with Hagood's standing and the timeliness of the claim. The judge inquired whether Hagood should file suit against Lemon in state court.[5] The hearing

---

[4] The balance of the $500,000 was paid to the trustee and trustee's counsel, and for litigation expenses.

[5] The judge stated: "I'm wondering isn't the appropriate avenue here for your client to maybe sue Lemon in state court. I mean I'm not suggesting that, but he could sue Lemon in state court [or the Carpenters], I guess he could

was recessed, but prior to being reset, Hagood withdrew his objection. The bankruptcy judge agreed to the final distribution including the additional fee award to Lemon. In all, Lemon's total fee awards for collecting $1,184,474.24 for the bankruptcy estate was $388,109.06.

Hagood then took his fee dispute to state court. In December 2010, he intervened in the on-going litigation between Lemon and Shaw. Lemon successfully moved to strike the intervention. Hagood then filed the suit from which this appeal arises on June 8, 2011. Hagood sued only Lemon; he did not sue Shaw nor the partnership of Shaw & Lemon. Round one of this suit resulted in a judgment in Hagood's favor for $97,024.77 in breach of contract damages, and an additional $125,000.00 in attorney's fees. On appeal, the court held that the charge erroneously referred to Hagood's contract as a contingency in the fees "*related to* the Firm's representation" on the Carpenter case, and not twenty-five percent of the fees the firm received *under* the contingent-fee agreement with the Carpenters. *Lemon v. Hagood*, 05-13-00132-CV, 2014 WL 3700687, at \*4 (Tex.App.--Dallas July 24, 2014, no pet.)(mem.op.). The court concluded that the error was harmful because it expanded the scope of Hagood's compensation under the agreement beyond that supported by the evidence at trial. *Id*.

The court then reviewed the legal sufficiency of the evidence "under the charge that should have been given, that is, one that stated Hagood's compensation under his contract with the firm was twenty-five percent of the fees received by the firm under the contingent-fee agreement with the Carpenters." *Id*. at \*5. Finding the evidence was legally sufficient, the court rejected the contention that because the firm had never received any funds, Hagood was owed nothing. A reasonable jury could have determined that Lemon's affidavit filed in the bankruptcy court "made impossible the performance of the condition precedent to Lemon's liability under

---

sue [the Carpenters] in state court and let a state court judge interpret whether he's violating, you know, 523, and whether his claim, if any, was discharged."

Hagood's agreement -- that the firm received funds under the Carpenter agreement." *Id*. at *6. "A reasonable juror could have determined that Lemon failed to cooperate by waiving the fee agreement with the Carpenters and that this failure to cooperate breached the agreement with Hagood." While there was some evidence that Lemon breached the agreement with Hagood, the case was reversed and remanded for a new trial because the charge was erroneous.

On remand the case was tried much as before, but with two different twists. For the first time, Lemon claimed that he had no individual liability as a partner until a judgment was obtained against the partnership of Shaw & Lemon. He raised this issue a few days after the Texas Supreme Court handed down *American Star Energy and Minerals Corporation v. Stowers*, 457 S.W.3d 427 (Tex. 2015) which contains language consistent with Lemon's claim. Because Hagood never sued the partnership, Lemon contended that he could have no individual liability. The second twist involved the sale order in the Carpenter bankruptcy (selling the claim back to the Carpenters, free and clear of all liens and encumbrances). Lemon argued this order extinguished Shaw & Lemon's fee interest in the claim, and consequently Hagood's dependent interest as well. The trial court rejected a summary judgment and jurisdictional challenge built around these arguments.

At trial, the jury found that Shaw and Lemon were in a partnership when Hagood was asked to participate in the Carpenter litigation. The jury also found that Lemon failed to pay Hagood for his services in trying the Carpenter lawsuit. The jury further found that Hagood is excused from, and Lemon is quasi-estopped to complain about, any failure to first satisfy a judgment against the partnership. The jury awarded Hagood $97,204 in damages for Lemon's failure to pay him as agreed, and awarded $207,608.75 in attorney's fees. Hagood was also

7

awarded conditional awards of appellate attorney's fees. Lemon brings nineteen issues for our review. We begin with those issues reflecting the new arguments raised in the second trial.

## NECESSITY OF OBTAINING A JUDGMENT AGAINST THE PARTNERSHIP

After the case was remanded for a new trial, Lemon claimed that Hagood was required to have first obtained a judgment against the partnership before he could directly sue Lemon.[6] At the time of the first trial, precedent in the Dallas Court of Appeals held that there was no requirement to first sue and obtain a judgment against the partnership before pursuing an individual partner. *Reagan v. Lyberger*, 156 S.W.3d 925, 929 (Tex.App.--Dallas 2005, no pet.)("Reagan cites us to no cases, and we have found none, requiring that the partnership entity be sued separately to hold the individual partners liable. We conclude Reagan's challenges to the judgment against him on the basis of partnership are without merit.").[7] Following remand of this case, however, the Texas Supreme Court issued its opinion in *American Star Energy and Minerals Corporation v. Stowers*, 457 S.W.3d 427 (Tex. 2015) which resolved the issue of when limitations accrue against a partner for a partnership debt. *Id.* at 428. In deciding that issue, the court wrote:

> The statutory prerequisites to enforcement make a partner's liability not only derivative of the partnership's liability, but contingent on it for all practical purposes. If a partnership obligates itself to pay a sum or perform a service under a contract, the individual partners, though liable for the obligation under the [Texas Revised Partnership Act], cannot immediately be called on to pay or perform in lieu of the partnership. In either case, the claim must be litigated against the partnership so that its obligation is determined, reduced to damages, and fixed in a judgment. *See* TEX.BUS.ORGS.CODE § 152.306(b)(2)(A). Second, the plaintiff-creditor must have ninety days' opportunity to satisfy that judgment from the partnership's assets. *Id.* § 152.306(b)(2)(C).

---

[6] The issue was raised below by summary judgment, motion for directed verdict, and objection to the charge. Lemon raises the issue here through a number of issues challenging: the legal basis for the liability question; the evidence to sustain jury findings; and alleged improper wording of jury instructions (Issues Nine, Ten, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, and Seventeen). The issue is raised more globally in Issue Seven.

[7] Lemon was in fact counsel of record in *Lyberger*.

*Id*. at 431.

## The Statutory Exceptions

*American Star* derives the obligation to obtain a judgment against the partnership from the Texas Revised Partnership Act, and we begin there.[8]  A Texas partnership is "an entity distinct from its partners."  TEX.BUS.ORGS.CODE ANN. § 152.056 (West 2012).  It can therefore sue and be sued as an entity.  *See* TEX.R.CIV.P. 28.  A creditor must obtain a judgment both against the partnership as an entity and the partner before the partner's individual assets may be executed upon, though this may be accomplished in the same lawsuit.  This conclusion flows from Section 152.306 (a) and (b).  Subsection (a) provides that a "judgment against a partnership is not by itself a judgment against a partner."  *Id.*  It makes clear that a "judgment may be entered against a partner who has been served with process in a suit against the partnership."  Subsection (b) then provides that a creditor may proceed against a partner or a partner's property only if a judgment "is also obtained against a partner" which "remains unsatisfied for 90 days."  Section 152.306(b) is, however, subject to several exceptions found in Subsection (c):

> (c) Subsection (b) does not prohibit a creditor from proceeding directly against one or more partners or the property of the partners without first seeking satisfaction from partnership property if:
>
> (1) the partnership is a debtor in bankruptcy;
>
> (2) the creditor and the partnership agreed that the creditor is not required to comply with Subsection (b);
>
> (3) a court orders otherwise, based on a finding that partnership property subject to execution in the state is clearly insufficient to satisfy the judgment or that compliance with Subsection (b) is excessively burdensome; or
>
> (4) liability is imposed on the partner by law independently of the person's status as a partner.

---

[8] Section 152.306 of the Business Organizations Code recodified Section 3.05(d) of the Texas Revised Partnership Act without substantive change.  *Cf.* TEX.REV.CIV.STAT.ANN. art. 6132b-3.05(d)(expired)(text available at Act of June 19, 1993, 73rd Leg., R.S. ch. 917, § 1, 1993 TEX.GEN.LAWS 3887, 3893) with TEX.BUS.ORGS.CODE ANN. § 152.056 (West 2012).

*Id.*

Hagood focuses on the third exception, and argues that the Shaw & Lemon partnership was devoid of assets or that litigating against it would have been excessively burdensome. We disagree for two reasons. The first reason is procedural. Hagood raised this argument as one of many responses to Lemon's motion for summary judgment. The trial court denied the motion without elaborating its reasons. Consequently, the court never made a specific finding that partnership property was "clearly insufficient" to satisfy the judgment, or that suing the partnership would have been "excessively burdensome." The exception requires such a finding from the trial court. *Id*. at § 152.306(c)(3).

The second reason is substantive. The exceptions found in Subsection (c) pertain to the ninety-day waiting period, and not the requirement for obtaining the judgment against the partnership. This conclusion follows from a construction of the statute. Statutory construction is a legal question that we review *de novo. In re ReadyOne Industries, Inc.*, 394 S.W.3d 680, 684 (Tex.App.--El Paso 2012, orig. proceeding), *citing Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). Our primary focus in statutory interpretation is to give effect to legislative intent, considering the language of the statute, as well as its legislative history, the objective sought, and the consequences that would flow from alternative constructions. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 383 (Tex. 2000). We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). We must "presume that every word in a statute has been used for a purpose and that every word excluded was excluded for a purpose." *Emeritus Corporation v. Blanco*, 355 S.W.3d 270, 276 (Tex.App.--El Paso 2011, pet. denied); *Cornyn v. Universe Life Ins. Co*., 988 S.W.2d 376, 379 (Tex.App.--Austin 1999, pet. denied).

Subsection (b) states two predicates before one may directly pursue a partner: (1) having a judgment against the partnership; and (2) that judgment going unsatisfied for at least ninety days. TEX.BUS.ORGS.CODE ANN. § 152.306(b).[9] Significantly, subsection (c) allows a creditor to proceed against a partner *without first seeking satisfaction from partnership property*" if one of the four exceptions are met. *Id.* [Emphasis added]. The proviso thus addresses only one of the predicates -- the passing of the ninety-day satisfaction period. The proviso in fact uses the same root word ("seeking satisfaction") as is found in subsection (b)(2)(C)("unsatisfied" judgment against the partnership). The only construction that favors Hagood would assume the Legislature used the phrase "without first seeking satisfaction from partnership property" as a shorthand reference to both obtaining a judgment and the satisfaction period. But we must apply the common and ordinary meaning of words. *Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014). The term "satisfaction" when used in the context of satisfaction of a debt means "[t]he fulfillment of an obligation; esp., the payment in full of a debt." Black's Law Dictionary (10th ed. 2014). It does not mean obtaining a judgment. And although the statement was dicta, the Texas Supreme Court reached the same conclusion in *America Star*. The court's opinion describes the ninety-day period but notes that a creditor might "forego this satisfaction period" if one of the four Subsection (c) exceptions are met. *Am. Star*, 457 S.W.3d at 435 n.2.

---

[9] The text of that section reads:

> (b) Except as provided by Subsection (c), a creditor may proceed against one or more partners or the property of the partners to satisfy a judgment based on a claim against the partnership only if a judgment:
>> (1) is also obtained against the partner; and
>> (2) based on the same claim:
>>> (A) is obtained against the partnership;
>>> (B) has not been reversed or vacated; and
>>> (C) remains unsatisfied for 90 days after:
>>>> (i) the date on which the judgment is entered; or
>>>> (ii) the date on which the stay expires, if the judgment is contested by appropriate proceedings and execution on the judgment is stayed.

We apply the plain meaning of words used in legislation "unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). While it might be argued that the exceptions should apply equally to the judgment requirement as well as the satisfaction period, our role is not to re-write legislation as we would see fit. We enforce statutes "as written" and "refrain from rewriting text that lawmakers chose." *Summers*, 282 S.W.3d at 443. As the Texas Supreme Court in *Jaster* noted:

> Though some might argue that this approach was not the best policy choice, 'we read unambiguous statutes as they are written, not as they make the most policy sense.' Even if the result seems to us to be unreasonable, 'reasonableness is not the standard for eschewing plain statutory language.' That high standard is absurdity, and we cannot say that this statute achieves an absurd result.

*Jaster*, 438 S.W.3d at 570. [Citations omitted]. We likewise conclude that the exceptions pertain to the satisfaction period, and not the requirement to obtain a judgment.

### Waiver and Estoppel as Exceptions

Hagood's remaining response to *American Star* is found in the jury's answers to questions three and four. In question three, the jury found that Hagood was excused from attempting to satisfy a judgment against Shaw & Lemon. The jury was instructed that it might find the requirement excused if: (a) Lemon waived the requirement, i.e. he intentionally surrendered a known right or engaged in intentional conduct inconsistent with claiming the right; or (b) Lemon made it impossible for Hagood to perform the condition. In question four, the jury found that Lemon was "quasi-estopped" to assert the requirement. "Quasi-estoppel" was defined as a "rule to prevent a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken by him." The jury was told this "doctrine applies where it would be unconscionable to allow a party to maintain a position inconsistent with one in which he acquiesced, or of which he accepted a benefit."

12

On appeal, Lemon argues that neither waiver nor estoppel can create direct liability for a partner in the absence of a judgment against the partnership. In other words, as a matter of law, questions three and four were improper and cannot excuse the failure to first obtain and attempt to satisfy a judgment against the partnership. For this proposition, Lemon first cites *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 784-85 (Tex. 1988) which holds that a misrepresentation by a homeowner could not create an equitable lien on homestead property, nor could it estop a homeowner from denying the validity of a lien which violates the Texas Constitution. Instead, a lien on a homestead can be created only in the manner set out in the Constitution. Lemon reasons that a partner's liability is similarly limited to that provided in the Texas Revised Partnership Act, and it is not subject to waiver or estoppel.

Along the same line, Lemon relies on cases such as *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 777 (Tex. 2008) which hold that neither waiver nor estoppel can expand coverage under an insurance policy. Waiver and estoppel preserve existing rights, but do not create independent causes of action. *Hruska*, 747 S.W.2d at 785; *Smith v. City of Lubbock*, 351 S.W.3d 584, 588 (Tex.App.--Amarillo 2011, pet denied). Thus in the insurance context, waiver and estoppel might deny an insurance carrier's ability to invoke an exclusion from the insurance policy, but cannot rewrite the policy to create coverage which never existed. *Ulico Cas.*, 262 S.W.3d at 777.

We are unpersuaded by Lemon's effort to invalidate waiver and estoppel as a matter of law. Below he contended the requirement to obtain a judgment against the partnership was akin to a condition precedent. If so, a condition precedent can be waived, and the waiver can be inferred from the parties' conduct. *Sun Exploration and Production Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). In the insurance context, for instance, filing a proof of loss or notice of claim

are conditions precedent, but the failure to file them may be defeated by jury finding of waiver. *See American Teachers Life Ins. Co. v. Brugette*, 728 S.W.2d 763, 764 (Tex. 1987); *U.S. Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353, 357 (Tex. 1971).

Parties cannot, however, waive a mandatory statutory duty that is jurisdictional. *Crosstex Energy Services, L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 391-92 (Tex. 2014). But not all mandatory statutory duties are jurisdictional in nature. *Id*; *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 494 (Tex. 2001). A court must first determine if the duty is indeed mandatory, and if so, if it is jurisdictional. To do so, we consider: (1) the plain meaning of the statute; (2) whether the statute specifies the consequences for noncompliance; (3) the purpose of the statute; and (4) the consequences from each possible interpretation. *Crosstex Energy Servs.*, 430 S.W.3d at 392; *Helena Chem.*, 47 S.W.3d at 495. We should resist classifying a provision as jurisdictional absent clear legislative intent to that effect. *Crosstex Energy Servs.*, 430 S.W.3d at 392.

This statute plainly requires a judgment against the partnership, and some satisfaction period to follow thereafter, but it contains no remedy for non-compliance. Nothing in the plain language of Section 152.306 states that the Legislature intended the judgment-satisfaction period to be jurisdictional. *Cf. Crosstex Energy Servs.,* 430 S.W.3d at 392 (setting out example of unequivocal language in Labor Code which makes certain filing deadlines jurisdictional). The lack of any remedy for non-compliance in Section 152.306 weighs in favor of the requirement being non-jurisdictional. *See Helena Chem. Co.*, 47 S.W.3d at 495; *see also Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 962 (Tex. 1999); *Park v. Escalera Ranch Owners' Assn., Inc.*, 457 S.W.3d 571, 588-89 (Tex.App.--Austin 2015, no pet.).

Section 152.306 creates an orderly process for pursuing satisfaction of partnership obligations. *Cf.* UNIFORM PARTNERSHIP ACT § 307. cmt (Uniform Law Comm'n 2013)("Subject to the five listed exceptions, this subsection prevents a partner's assets from being the first recourse for a judgment creditor of the partnership, even if the partner is liable for the judgment debt under Section 306."). Statutory provisions that are included merely to "promot[e] the proper, orderly and prompt conduct of business, are not generally regarded as mandatory," *Chisholm v. Bewley Mills*, 155 Tex. 400, 287 S.W.2d 943, 945 (1956). Were we to construe the provision as mandatory and jurisdictional, a partner might raise a defect late into the litigation and well after the limitation period for pursuing the partnership has passed. If the statute is construed as mandatory, but not jurisdictional, a partner might still compel the addition of the partnership to the litigation, but be subject to waiver or estoppel defenses based on that partner's conduct. Because one of the exceptions in 152.306(c) already includes the concept of waiver (an agreement by the partner that Section 152.306(b) does not apply), there is little violence to the underlying purpose of the statute if it be non-jurisdiction. Having considered all the factors, we conclude that the Legislature did not intend to make the requirement to obtain a judgment against the partnership jurisdictional. Accordingly, the waiver and estoppel questions were proper questions for the jury.

### Sufficiency of the Evidence to Support the Verdict

*Pleadings to Support the Submitted Issues*

We thus turn to Lemon's attacks on the jury's finding in questions three and four. He first claims that there was no pleading to support the submission of impossibility, waiver, and quasi-estoppel. "The live pleadings define the issues in a case." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 219 (Tex. 2001). "The judgment of the court shall conform to the pleadings . . . ."

15

TEX.R.CIV.P. 301. Hagood's first amended petition was filed on May 11, 2015, and trial started on May 19, 2015. That pleading asserted several defenses to the *American Star* argument, including laches, waiver, and quasi-estoppel. The pleading was timely under TEX.R.CIV.P. 63. Lemon's argument, as we understand it, is that a pre-trial order entered before the first trial required all amended pleadings to be filed by March 2, 2012. No new scheduling order was issued after remand of the case following the first trial. Lemon apparently contends the first amended petition was tardy under that prior pre-trial order.

By the same token, the same order required all motions for summary judgment to be filed by June 29, 2012. Lemon filed several motions for summary judgment following remand, which the trial court heard over Hagood's objection. The trial court noted both parties' timeliness arguments, and stated that neither had filed a motion to strike, and overruled any timeliness objection.

A trial court has the discretion to enter a pre-trial order with pleading deadlines that prevail over those in our procedural rules. *ForScan Corp. v. Dresser Industries., Inc.*, 789 S.W.2d 389, 393 (Tex.App.--Houston [14th Dist.] 1990, writ denied). The flipside of that proposition is that a trial court has the discretion to change those deadlines. Even without a formal ruling allowing a late filed pleading, we presume such a ruling when the record is silent of any basis to conclude that the amended petition was not considered by the trial court, and no surprise is shown. *Goswami v. Metropolitan Savimgs and Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988); *Wilson v. Korthauer*, 21 S.W.3d 573, 577 (Tex.App.--Houston [14th Dist.] 2000, pet denied). Both conditions are met here. The trial court did in fact consider and submit the requested defenses, and no surprise can be shown. The defensive matters were all set out and

16

argued extensively in the motion for summary judgment submitted a month before trial. There is no claim of surprise here.

Thus the question before us is whether the trial court erred in considering the amended pleading. We review that decision under an abuse of discretion standard. *In re City of Dallas*, 445 S.W.3d 456, 463-64 (Tex.App.--Dallas 2014)(orig. proceeding). That discretion is guided by Rule 63 which requires a trial court to grant a leave to amend "unless there is a showing that such filing will operate as a surprise to the opposite party." TEX.R.CIV.P. 63. The burden to show surprise or prejudice is on the party resisting the amendment. *See Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939-40 (Tex. 1990). An amendment adding a new cause of action or defense operates as a surprise and is prejudicial on its face if it (1) reshapes the nature of the case, (2) could not have been anticipated, and (3) prejudices the complaining party's presentation of the case. *Thomas v. Graham Mortg. Corp.*, 408 S.W.3d 581, 593 (Tex.App.--Austin 2013, pet. denied); *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 186 (Tex.App.--Houston [14th Dist.] 2002, no pet.).

We fail to find any surprise here. The motion for summary judgment and response fleshed out the arguments of the parties well in advance of trial. And even though the defenses were new, they certainly would not be unanticipated, and were prompted by Lemon's late asserted *American Star* arguments. We therefore overrule the several issues complaining of a lack of proper pleadings.[10]

---

[10] The amended petition did not specifically mention the impossibility defense, but impossibility was already raised in this case. The Dallas Court's opinion already upheld the sufficiency of the evidence for a liability question based on an impossibility theory. If there were a pleading deficiency that precluded that theory, it should have been raised in the first appeal. *See Allen-Burch, Inc. v. Texas Alcoholic Beverage Com'n*, 104 S.W.3d 345, 351 (Tex.App.--Dallas 2003, no pet.)(when litigation results in an appeal followed by a remand to the lower court, the "law of the case" doctrine bars re-litigation of any law points already decided). The trial court in this case made essentially the same point, rejecting Lemon's pleading assertion because the court of appeals opinion included impossibility as a basis for its ultimate conclusion. We also overrule Issue Eleven which raises a challenge to the impossibility defense based on a lack of pleadings.

17

*Sufficiency of the Evidence to Support the Defenses*

We sustain a legal sufficiency challenge when the fact finder's decision is unsupportable as a matter of law because: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) there is no more than a mere scintilla of evidence proving a vital fact; or (4) the evidence conclusively establishes the opposite proposition of a plaintiff's proffered vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). We view evidence in the light most favorable to the jury's finding on a legal sufficiency challenge, indulging "every reasonable inference" in the trial court's favor. *El Paso Independent School Dist. v. Pabon*, 214 S.W.3d 37, 41 (Tex.App.--El Paso 2006, no pet.).

Excuse could be found under question three in at least two ways: waiver and impossibility. As to waiver, many of the arguments below related to the fact that Lemon never asserted the requirement to obtain a judgment against the partnership until well after the first appeal. Hagood contends that *American Star*'s holding grows out of the Texas Revised Partnership Act which has been the law for many decades. By waiting until the eve of the second trial of this case, Hagood contended that Lemon waived any reliance on Section 152.306. That argument ignores that *American Star* effectively overruled the holding in *Lyberger* which governed cases in the within the district of the Dallas Court of Appeals. *American Star* was not decided until after the first appeal of this case. Waiver was defined as the knowing and intentional surrender of a right. There was no evidence of such a waiver here.[11]

---

[11] The *American Star* holding is presaged in the Texas Supreme Court's opinion of *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 463-64 (Tex. 2011). The court there outlined the evolution of the "entity" and "aggregate" theories of Texas partnerships and concluded that the adoption of the 1993 TRPA "unequivocally embrace[d] the entity theory of partnership by specifically stating . . . that a partnership is an entity distinct from its partners." Id., *quoting* TEX.REV.CIV.STAT.ANN. art. 6132b-2.01, Comment of Bar Committee--1993. Nonetheless, that case has no distinct discussion of a requirement to first sue a partner, nor does it mention *Lyberger.*

Conversely, there was some evidence to support the jury's finding based on Lemon's opposition to Hagood's attempt to intervene into the earlier litigation between Shaw and Lemon. That intervention sought to assert separate tort claims against Lemon, but it also claimed an equitable interest in any partnership assets to the extent of Hagood's claim, based on a claimed breach of contract by the partnership.[12] Lemon filed an opposition to the pleading which succeeded in striking the intervention. Accordingly, we find some evidence of waiver based on that act.

The jury's answer to question four also excused the failure to obtain a judgment against the partnership based on quasi-estoppel. That theory precludes a person from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000); *Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex.App.--Dallas 2011, pet. denied). The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced. *Lopez*, 22 S.W.3d at 864; *Paul Taylor Homes*, 349 S.W.3d at 268; *Mexico's Industries, Inc. v. Banco Mexico Somex, S.N.C.*, 858 S.W.2d 577, 581 n.7 (Tex.App.--El Paso 1993, writ denied).

Though disputed, there is some evidence to support the jury's quasi-estoppel finding. At times, Lemon denied or at least equivocated on the existence of his partnership with Shaw. During his litigation with Shaw, he claimed Shaw & Lemon was a partnership. After the trial of the Shaw-Lemon suit, he testified in the first trial of this case that he did not believe Shaw & Lemon was a partnership. During the second trial of this case, Lemon testified the he was in a

---

[12] The intervention in part asserted: "As a direct and proximate result of the anticipatory breach or breach of the agreement between Hagood and SHAW & LEMON, Hagood has incurred actual damages within the jurisdictional limits of this Court.

partnership with Shaw. The jury thus heard testimony that Lemon had changed his position. By agreeing to, then denying, then again agreeing to the existence of the partnership, Lemon urged inconsistent positions that the jury might have believed was unconscionable. We overrule Appellant's issues challenging the judgment and jury findings based on the failure to obtain a judgment against the partnership.

## THE BANKRUPTCY ORDERS

Several of Lemon's issues focus on the orders issued by the Holmes Builders bankruptcy court awarding Lemon his fees (the Fee Orders). He also focuses on the order in the Carpenter bankruptcy which sold the rights to the Holmes Builder claim to the Carpenters (the Sale Order). In varying ways, Lemon contends that the judgment here is an improper collateral attack on those orders, and that the bankruptcy courts had the exclusive jurisdiction to decide those matters.[13] While we reject Lemon's contention that the Fee Orders bar the claim here, we conclude otherwise as to the Sale Order.

### The Fee Orders

Federal courts possess exclusive jurisdiction over bankruptcy cases, but state and federal courts share concurrent jurisdiction over "all civil proceedings arising under [the Bankruptcy Code], or arising in or related to cases under [the Bankruptcy Code]." 28 U.S.C. § 1334(a)-(b); *Graber v. Fuqua*, 279 S.W.3d 608, 611 (Tex. 2009). There are exceptions to this concurrent jurisdiction, one being that bankruptcy courts enjoy exclusive jurisdiction in the retention of professionals to serve the bankruptcy estate. "The district court in which a case under title 11 is

---

[13] Issue One contends the trial court lacked jurisdiction to collaterally attack the Fee Orders. Issue Two makes the same claim with regard to the Sale Order. Issue Four makes essentially the same claim as to both the Fee Orders and the Sale Order, but focuses on the absence of any issue or proof that those orders were void. Issue Three claims the trial court's judgment is barred by Section 504 of the Bankruptcy Code and Texas Disciplinary Rule of Professional Conduct 1.04(f). Issue Ten asserts the trial court erred in submitting the breach of contract question as there was no evidence to support the question or it was based on a non-existent duty.

commenced or is pending shall have exclusive jurisdiction . . . over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327." 28 U.S.C. § 1334(e)(2)(2006). Section 327 provides that "the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a)(2015).

Accordingly, the fee that an attorney might earn in representing the bankruptcy estate, even if filed in a state court action, is exclusively set by the bankruptcy court. *Brown v. Gerdes*, 321 U.S. 178, 181, 64 S.Ct. 487, 489, 88 L.Ed. 659 (1944)(so holding for attorney retained to file suit in state court for benefit of bankruptcy estate). Congress was concerned with the regulation of administrative expenses, including attorney's fees, that might otherwise drain the bankruptcy estate. *Id*. The bankruptcy court awards "administrative expenses" which may include "reasonable compensation" for an attorney "based on the time, the nature, the extent, and the value of such services, and the cost of comparable services." 11 U.S.C. § 503(b)(4)(2016). The fees can only be awarded following notice and hearing, and an attorney is prohibited from splitting the fee with someone other than a "member, partner, or regular associate in a professional association, corporation, or partnership." *Id*; 11 U.S.C. § 504(b)(2)(2016). Thus, for instance, an attorney properly employed by the trustee cannot pay a referral fee to another lawyer outside of his or her firm without the bankruptcy court's approval. *In re Smith*, 397 B.R. 810, 819 (Bankr. E.D. Tex. 2008). It matters not that the referral fee could have been negotiated before the filing of the bankruptcy proceeding, or that the referral attorney is not a party to the bankruptcy proceeding. *Id.*

Lemon weaves these concepts into Issues One and Four which contend that only the bankruptcy court had jurisdiction over the fee award. He contends "the primary basis of Hagood's claim originates with his accusation of misconduct by Lemon in executing" the affidavit attached to the trustee's application to employ him. Lemon then reasons that only the bankruptcy court could regulate that matter. We first conclude that Lemon misconstrues the basis of Hagood's claim. Hagood does not challenge the legality of the affidavit, nor claim that it was improper under bankruptcy court rules or procedures. Rather, Hagood's claim is that execution of the affidavit had an effect on a third party contract (the Hagood--Shaw & Lemon contract) which was not before the bankruptcy court.

The earlier opinion of the Dallas Court of Appeals made the same point. In that appeal, Lemon argued that because neither the firm nor Lemon received any funds under the contingent fee agreement with the Carpenters, Hagood was not entitled to any money under Hagood's agreement with the firm. *Lemon*, 2014 WL 3700687, at *5-6. But there was sufficient evidence to support a finding that Lemon and the firm did not receive any funds under the Carpenter agreement because Lemon, had "waived all claim for and recovery of attorney fees . . . from Gary Carpenter and Julie Perez" through the affidavit used to secure his position as special counsel. *Id.* At the point he filed the affidavit, the contingency agreement was potentially an asset of the partnership. And as even a former partner of Shaw & Lemon, he had some responsibility to look after the partnership's assets. *Id*. His act bound the partnership. TEX.BUS.ORGS.CODE ANN. §§ 152.301, 152.302. Consequently, there was some evidence in the first trial record that Lemon made impossible the performance of a condition precedent, and thus cannot defend based on that non-performance. *Id.* at *6, citing II Deerfield Ltd. P'ship v. Henry Bldg., Inc*., 41 S.W.3d 259, 265 (Tex.App.--San Antonio 2001, pet. denied)("It is elementary that

22

one who prevents or makes impossible the performance of a condition precedent upon which his liability under a contract is made to depend cannot avail himself of its nonperformance.").

As in the first trial, the Lemon's affidavit was admitted in evidence. The affidavit's significance was not to show a violation of some bankruptcy rule or procedure. Rather it was only a circumstance that determined the proof necessary to prosecute a claim based on a contract existing wholly outside the Holmes Builders bankruptcy proceeding.

Somewhat more troubling is the measure of damages presented to the jury. Hagood testified that he was entitled to the value of his services, which he quantified by reference to a twenty-five percent share of what Lemon was paid through the bankruptcy. Hagood's lawyer argued for the same measure of recovery to the jury. And that is exactly the figure the jury here used as damages for the breach of contract action. From this, Lemon contends that Hagood sought a split of the fee that bankruptcy court awarded Lemon which is improper under bankruptcy court rules. *See* 11 U.S.C. § 504(b)(2)(2016); *In re Smith*, 397 B.R. at 819. Nonetheless, Lemon has not urged as a distinct issue error in the admission of the evidence of his fee awards, nor urged a point based on the closing argument in the case. The jury's charge did not compel the jury to award any percentage of the fee awarded under the Fee Orders as the measure of damages. Instead, it asked the jury to find a sum that "would fairly and reasonably compensate Daniel Hagood for his damages, if any, that resulted from D. Brent Lemon's failure to pay him as agreed."[14] The reference to Lemon's fee award was a convenient proxy for the jury to determine the value of what could have been awarded had Lemon protected the

---

[14] Lemon's Issue Eight claims charge error in the contract damages question. The issue complains of refusing Lemon's requested issues, and claims the question failed to follow the wording required by the *Lemon v. Hagood I* opinion. We find no proposed question by Lemon on the damages issue. We review the trial court's charge under an abuse of discretion standard. *Webb v. Glenbrook Owners Ass'n, Inc.*, 298 S.W.3d 374, 380 (Tex.App.--Dallas 2009, no pet.), *citing Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990). We find no abuse in this circumstance where the trial court used a damages question mirroring the contract damages question from the Texas Pattern Jury Charge. *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business Consumer Insurance Employment* PJC 115.3 (2016). We overrule Issue Eight.

23

partnerships fee interest. We overrule issues One, Three, Four, and Ten as they pertain to the Fee Orders.

## The Sale Order

What we have said regarding the Fee Orders, however, cannot be said about the Sale Order. When the Carpenters filed their own bankruptcy, their claim against Holmes Builders became property of the bankruptcy estate. "Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, including causes of action belonging to the debtor at the commencement of the bankruptcy case, vest in the bankruptcy estate upon the filing of a bankruptcy petition." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008)(per curiam); *see also* 11 U.S.C. § 541(a)(2)(A)(a bankruptcy estate consists of, among other property, "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is . . . under the sole, equal, or joint management and control of the debtor."); *Douglas v. Delp*, 987 S.W.2d 879, 883 (Tex. 1999); *Depumpo v. Thrasher*, 05-14-00967-CV, 2016 WL 147294, at *3 (Tex. App.--Dallas Jan. 13, 2016, no pet.). Moreover, the bankruptcy court had exclusive jurisdiction over that asset. 28 U.S.C. § 1334(e). As we note earlier, that asset of the bankruptcy estate was then sold back to the Carpenters, and was sold "free and clear of all liens, claims and encumbrances."

Lemon contends that "free and clear of all liens, claims and encumbrances" encompasses the Shaw & Lemon's contingency interest, effectively stripping it out of the claim. That contingency interest is a necessary predicate for Hagood's recovery. Courts have described an attorney's contingency interest in a client's case in different ways. The Fifth Circuit describes an attorney's contingent fee agreement as an executory contract that converts to an equitable interest upon recovery of a judgment. *Missouri Pacific Railroad Co. v. Austin*, 292 F.2d 415,

419 (5th Cir. 1961). The Fourteenth Court of Appeals concluded that after judgment, an attorney who earns a contingency fee is an equitable owner (and not a mere claimant) to a portion of the judgment. *Madeksho v. Abraham, Watkins, Nichols & Friend*, 112 S.W.3d 679, 689 (Tex.App.--Houston [14th Dist.] 2003, pet. denied). A federal bankruptcy court concluded that the attorney holds no more than a security interest. *In re Equator Corp.*, 362 B.R. 326, 333 (Bankr. S.D. Tex. 2007), *aff'd sub nom. Norman v. Havis*, 06-30414, 2007 WL 2288045 (S.D. Tex. Aug. 6, 2007), *aff'd sub nom. In re Equator Corp.*, 261 Fed. Appx. 795 (5th Cir. 2008)(unpublished). However actually described, a bankruptcy court order which extinguishes all liens, claims, and encumbrances would on its face reach the attorney fee interest. A lien is defined as a "legal right or interest that a creditor has in another's property." Black's Law Dictionary (10th ed. 2014). An attorney's lien is defined as "[t]he right of an attorney to hold or retain a client's money or property . . . or to encumber money payable to the client (a *charging lien*) until the attorney's fees have been properly determined and paid." *Id.* A "claim" can be defined as "any right to payment or to an equitable remedy, even if contingent or provisional." *Id.* An "encumbrance" is defined as "[a] claim or liability that is attached to property or some other right and may lessen its value, such as a lien or mortgage; any property right that is not an ownership interest." *Id*. The Shaw-Lemon contingency interest in the Carpenter's claim could fit any one of these definitions. And if that interpretation of the order is wrong, we conclude that only the bankruptcy court could clarify otherwise.

If the Sales Order expressly invalidates the attorney's contingency interest, then Hagood must somehow invalidate the order. Generally, a party cannot collaterally attack an order from one court by challenging it in another. *Browning v. Prostok*, 165 S.W.3d 336, 345 (Tex. 2005). One exception to this rule is when the challenged judgment is void. *Browning v. Placke*, 698

S.W.2d 362, 363 (Tex. 1985). A judgment is void only when it is apparent that the court rendering the judgment "had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act." *Id., citing Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 881 (Tex. 1973).

Nothing here proves that the Sales Order is void. The trustee and the Carpenters were parties to the proceeding. The Shaw & Lemon firm had been appointed in that bankruptcy proceeding to pursue the claim. The bankruptcy court had subject matter jurisdiction over the claim and the authority to dispose of it. As a part of "core proceedings" bankruptcy courts have the authority to sell property and liquidate assets of the bankruptcy estate. *See* 28 U.S.C. § 157(b)(2)(N),(O)(2006). The bankruptcy court had the authority to condition the sale by either including or not including liens. *See Dallas County Tax Collector v. Andolina*, 303 S.W.3d 926, 930 (Tex.App.--Dallas 2010, no pet.)(bankruptcy court approved sale of property, but subject to liens of taxing authorities); *Carney's Lumber Co. v. Lincoln Mortg. Inv'rs*, 610 S.W.2d 838, 842 (Tex.Civ.App.--Tyler 1980, no writ)(noting the authority of the bankruptcy court to make a sale free and clear of all existing liens as a valid exercise of authority by the bankruptcy court.). Hagood offers no argument that the bankruptcy court lacked the authority to enter the Sales Order as it did.

Nor could the trial court interpret the Sales Order's language of "free and clear of all liens, claims and encumbrances" to apply to something other than the attorneys' fee interest. Even an interpretation of another court's order can be the functional equivalent of an attack on that order. *Andolina*, 303 S.W.3d at 931 ("The Andolinas may not now invoke the tax code and seek a declaration which would require the trial court to interpret the bankruptcy court's treatment and result in a modification of the Taxing Authorities' claims under the confirmed

plan."); *Depumpo*, 2016 WL 147294, at *5 ("Mandel and SCD argue they only seek to interpret the Final Judgment, not declare it void. However, similar considerations are at play when a declaratory judgment is sought not to declare an earlier judgment void, but to have a court merely 'interpret' a prior judgment."); *see also Browning*, 165 S.W.3d at 346-47 (collateral attack also includes relief other than revoking the prior order, if "it necessarily challenges the integrity of the order and results in a review, perhaps a recalculation" of the matters at issue). We conclude that at a minimum, Hagood's claim turns on the interpretation of the Sale Order which the trial court here could not do.

The Sale Order thus extinguished Shaw & Lemon's fee interest in the claim. Hagood's interest in the contingency fee was dependent on Shaw & Lemon's fee. In his words, "If we got nothing, I got nothing." When Shaw & Lemon's fee interest was extinguished, so to was his potential recovery. To recover compensatory damages, a breach-of-contract plaintiff must establish that he suffered some pecuniary loss as a result of the breach of contract. *Prudential Sec., Inc. v. Haugland*, 973 S.W.2d 394, 396 (Tex.App.--El Paso 1998, pet. denied).

As with the Fee Orders, Shaw & Lemon might be charged with breach of their agreement with Hagood if they failed to protect their contingency interest leading up to the Sale Order. Like the Dallas Court of Appeals earlier concluded with respect to Lemon's action in the Holmes Builder's bankruptcy, a contracting party has an implied duty to cooperate in every contract in which cooperation is necessary for performance of the contract. 2014 WL 3700687, at *6, *citing Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.,* 184 S.W.3d 760, 770 (Tex.App.--Dallas 2005, pet. denied)("A duty to cooperate is implied in every contract in which cooperation is necessary for performance of the contract."). With sufficient evidence, a jury might have concluded that

27

Lemon or Shaw would have breached that duty if they sat on their hands as the trustee moved for approval of a Sale Order that extinguished Hagood's interest.

But we have no evidence regarding the backstory of the Sale Order. The record is barren of any detail other than the Sale Order itself. It is unknown who if anyone represented the Carpenters in that sale, or who negotiated the terms with the trustee. It is unclear if anyone objected. Shaw was counsel of record for the trustee for the purpose of pursuing the claim, and presumably he would have been alerted to the motion, but it is unclear if he objected, or if not, whether any objection would have been sustained. While a jury had some evidence to conclude that Lemon's action with respect to the Fee Orders made collection by the Shaw & Lemon partnership impossible, there was no similar evidence with respect to the Sale Order.[15] The date of the Sale Order preceded the Holmes Builders bankruptcy, and renders any actions based on Lemon's conduct there irrelevant. We accordingly sustain Issues Two, Four, and Ten as they pertain to the Sale Order. We sustain Issue Nineteen to the extent it challenges the attorney's fee recovery incurred for prosecuting this case if there is no valid underlying breach of contract claim. In sustaining these issues, we reverse and render judgment that Hagood take nothing.

### REMAINING ISSUES

Lemon has raised several additional issues, some carried over from his first appeal. He contends in Issue Three that Disciplinary Rule 1.04 prevents any fee award as Hagood had no

---

[15] We might envision several possible challenges to the Sales Order. Some authority suggests that a lien could only be extinguished through an adversary proceeding where all affected parties are served and have an opportunity to appear. *See Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir. 1995)(noting Bankruptcy Rule 7001(2) expressly requires initiation of an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property," which would include filing a complaint and service of a summons). Beyond just the bankruptcy rules, due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The sparsity of information on how the Sales Order came to be, however, denies us any latitude at this late stage to invoke any of these arguments, and because Hagood's brief both here and below intermingles discussion of the Fee Orders and Sale Order, we are hard pressed to discern his specific reply to Sales Order issue.

written contract with the Carpenters. *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.04(f), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013)(Tex.State Bar R. art. X § 9). He claims in Issue Five that Hagood is barred by res judicata because he first asserted this very claim in the Holmes Bankruptcy which is now resolved by a final order. In Issue Six, he contends that Hagood's claims are barred by the statute of limitations. Finally in Issue Eighteen he challenges the attorney's fee award for prosecuting this case based on late disclosed evidence. As did the Fifth Court of Appeals, we decline to rule on these issues in light of our holding on the Sales Order.

## CONCLUSION

In reference to Lemon's *American Star* arguments, we overrule Issues Seven, Eight, Nine, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, and Seventeen. Regarding his arguments as to the Fee Orders, we overrule Issues One, Four, and Ten. We sustain Issues Two, Four, and Ten as they pertain to the Sale Order and sustain Issue Nineteen as it pertains to the award of attorney's fee for prosecuting this case. We decline to rule on Issues Three, Five, Six, and Eighteen. We reverse the judgment below and render judgment that Hagood take nothing.

July 26, 2017

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., not participating

29